**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES JACKSON,**

                                        **Plaintiff,**

        **-against-**                                                **1:22-cv-148**
                                                                     **(TJM/ATB)**

**COUNTY OF ULSTER;**
**JOSHUA CALIENDO,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                            **DECISION and ORDER**

## I.      INTRODUCTION

        This civil rights action is brought under 42 U.S.C. § 1983 and New York State

common law. _See generally_ First Amended Complaint ("FAC"), Dkt. 10.   Plaintiff James

Jackson asserts claims of Fourth Amendment excessive force and state common law

assault and battery. _See id._  The claims are based on allegations that a police officer's K-9

twice bit Plaintiff while he was restrained and not offering any resistance or threat to the

police. _See id._  Defendants County of Ulster and Joshua Caliendo move pursuant to Fed.

R. Civ. P. 12(b)(6) to dismiss the FAC in its entirety. Dkt. 11.  Plaintiff opposes the motion,

Dkt. 13, and Defendants file a reply.  Dkt. 16.  The Court heard oral arguments on the

motion on July 13, 2022, at which time the Court reserved decision.  For the reasons that

follow, the motion is denied.

## II.     STANDARD OF REVIEW

In addressing a motion pursuant to Rule 12 (b)(6), the Court must accept as true the factual allegations in the FAC and draw all reasonable inferences in Plaintiff's favor. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  To survive the motion, the FAC must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**III.    BACKGROUND**

The following facts are taken from the FAC and are deemed to be true for purposes of this motion.

During the early morning hours of July 18, 2021 in New Paltz, New York, Plaintiff was looking for his friend who was going to drive him home to Middletown, New York. FAC ¶ 7.  While he was searching for his friend in the vicinity of Chase Bank, Plaintiff was physically accosted by two strangers, who apparently mistook him for someone else. *Id*. ¶ 8. Plaintiff was punched and taken to the ground. *Id*. While he was on the ground, Plaintiff was pepper-sprayed by a Town of New Paltz police officer. *Id*. ¶ 9.

While he was temporarily blinded, Plaintiff was detained by police officers, including Defendant Caliendo, an Ulster County Sheriff's Deputy. *Id*. ¶ 10.  Plaintiff was then searched, handcuffed behind his back, and walked toward a patrol car by two police officers. *Id*. ¶ 11.  Plaintiff was not violent and did not threaten any violence, nor was he carrying a weapon of any sort. *Id*. ¶¶ 12, 13.

While Plaintiff was still handcuffed behind his back and being walked to a patrol car

by two officers, a police K-9 handled by Deputy Caliendo bit Plaintiff on his right leg, causing him to fall to the ground. *Id*. ¶ 14.  While Plaintiff was still handcuffed with his hands behind his back and lying face down on the ground, Deputy Caliendo's K-9 bit Plaintiff's right leg again and held the bite, causing Plaintiff to suffer excruciating pain. *Id*. ¶ 15.  At no time after he was detained and before he was bit by the police K-9 did Plaintiff pose any threat to any police officer or anyone else.  *Id*. ¶¶ 16, 17.  The police dog's bites "took a chunk of flesh out of Plaintiff's right leg." *Id*. ¶ 19.  He later received eleven stitches to his leg; the bites have left scarring and impaired Plaintiff's ability to walk, run, and play with his young child. *Id*. ¶¶ 20, 21.

The FAC asserts as "Causes of Action":

24. By subjecting Plaintiff to unreasonable force, Defendant Caliendo violated Plaintiff's rights under the Fourth Amendment to the United States Constitution, as made actionable by 42 U.S.C. § 1983.

25. By subjecting Plaintiff to a K-9 attack without justification, Defendant Caliendo committed a battery against Plaintiff.

26. By subjecting Plaintiff to a K-9 attack without justification and failing to secure the police dog for which he was responsible, Defendant Caliendo committed an assault against Plaintiff, as he caused Plaintiff to reasonably fear a harmful touching.

27. Defendant County of Ulster has *respondeat superior* liability for the assault and battery suffered by Plaintiff when he was bitten twice by the UCSO police K-9 without justification and made to reasonably fear a harmful touching.

FAC ¶¶ 24-27.

The FAC seeks an award of compensatory damages, "jointly and severally, against the Defendants;" an award of  punitive damages against Defendant Caliendo; and an award of "reasonable attorneys fees' and costs as permitted by 42 U.S.C. § 1988."

3

IV.     DISCUSSION

1.  **Fourth Amendment Excessive Force Claim Against Deputy Caliendo**

Defendants argues that Plaintiff has not sufficiently pled a Fourth Amendment excessive force claim against Deputy Caliendo, and that in any event he is entitled to qualified immunity as a matter of law.  Plaintiff opposes these arguments.

**Fourth Amendment Excessive Force Standard**

Every person has a Fourth Amendment right to be free from excessive force by police officers, including during the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989).  To succeed on a Fourth Amendment claim, a plaintiff must demonstrate that the actions of the defendant officer were not "'objectively reasonable' in light of the facts and circumstances as presented to [the officer] at the time of the plaintiffs arrest." *Id.* at 397.  Whether an officer's actions were reasonable depends on a fact-intensive inquiry which takes account of "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396-97.

**Defendants' Position - Excessive Force**

Defendants argue that "Deputy Caliendo was acting pursuant to his official duties as a police officer, and under color of state law when he responded to the scene of a physically violent altercation in which Plaintiff was involved."  Def. Mem. L. at 5. Defendants interpret Plaintiff's allegations as being that "Deputy Caliendo subjected Plaintiff to unreasonable force, by way of a police K-9 biting him without justification,

4

simply because the police K-9 was Deputy Caliendo's responsibility." *Id.* (citing FAC ¶¶ 14-18, 24).  Defendants assert that Plaintiff's claims "are based solely on allegations of intentional conduct by Deputy Caliendo, while at the same time, the Amended Complaint fails to specify any intentional conduct or misconduct on his part, including failing to plead that Deputy Caliendo made any overt act in directing the police K-9 to act." *Id.* at 5-6. Defendants cite case law standing for the proposition that "absent police misconduct, the instinctive acts of trained canines...[do] not violate the Fourth Amendment." *United States v. Iverson*, 166 F. Supp.3d 350, 359 (W.D.N.Y. 2016), *aff'd*, 897 F3d 450 (2d Cir. 2018)(citing *United States v. Reed*, 141 F.3d 644, 650 (6th Cir.1998)).

Defendants also cite case authority for the proposition that "except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical." *Warr v. Liberatore*, 270 F.Supp.3d 637, 653 (W.D.N.Y. 2017) (citing *Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir. 2009)(quotation marks and alterations omitted); also citing *Benson v. Yaeger*, No. 05-CV-784S, 2009 WL 1584324, at 4 n.6 (W.D.N.Y. 2009) ("The test for whether a plaintiff can maintain a New York State law assault and battery cause of action against law enforcement officials is the exact same test as the one used to analyze a Fourth Amendment excessive force claim....")). From this Defendants argue that "[t]here exists no precedent in New York State to support a cause of action against law enforcement officials for common-law assault and battery based on the police K-9 biting an individual." Def. Mem. L. at 6 (citing *Ellington v. County of Monroe*, 15-CV-6310-FPG, 2018 WL 6605662, at 3, 2018 U.S. Dist LEXIS 212000, at *9  (W.D.N.Y. 2018)). Thus,

Defendants assert, "it follows that a Fourth Amendment excessive force claim, founded on identical facts and circumstances as the assault and battery claim, cannot be sustained." *Id.* Defendants argue that even when accepting Plaintiff's allegations as true, his "claims contradict, are fundamentally at odds with, and are unsupported by his factual allegations." *Id*. Further, Defendants argue that the FAC "fails to provide any non-conclusory allegations or facts supporting the existence or inference that . . . Deputy Caliendo's actions lead to the deprivation of Plaintiff's civil rights. The Complaint is implausible on its face, and Plaintiff's §1983 claim against Deputy Caliendo should be dismissed for failure to state a claim." *Id*. at 6-7.

### Plaintiff's Position - Excessive Force

Plaintiff asserts that courts within this Circuit, including in the Northern District, have long recognized that a police officer's use of significant force on a detained and subdued suspect violates the Fourth Amendment's proscription against unreasonable, or excessive, force. *See Bradley v. Rell*, 703 F. Supp. 2d 109, 121 (N.D.N.Y. 2010) ("Furthermore, the Court finds that a reasonable officer would have known that continuing to assault a handcuffed and subdued arrestee, and/or releasing a police dog on a handcuffed, immobilized arrestee violated" the Fourth Amendment); *Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 206 (N.D.N.Y 2008) ("Put simply, no police officer could reasonably believe that stepping on the head of an already-handcuffed, prone suspect and grinding his face into the pavement would not violate the suspect's right to be free from excessive force, regardless of the other surrounding circumstances."); *Jennings v. DOJ Serv.*, No. 02-CV-1405 (LEK/RFT), 2008 U.S. Dist. LEXIS 61763, at *21, (N.D.N.Y

Mar. 26, 2008) ("Given Plaintiff's contention that he was assaulted while shackled and handcuffed, his allegations describe an excessive use of force contrary to contemporary standards of decency.") (citing *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)); *Amato v. City of Saratoga Springs*, No. 95-CV-1510 (TJM), 1997 U.S. Dist. LEXIS 16660, at *3 (N.D.N.Y Oct. 4, 1997)("First, Flanagan's use of excessive force while Plaintiff was handcuffed to a desk is plainly reprehensible and tortious conduct.").

Plaintiff points out that the courts in this Circuit have also found that the use of a police K-9 to bite, or to bite and hold, a suspect "constitutes, at a minimum, a significant degree of force." *Whitfield v. City of Newburgh*, No. 08 CV 8516 (RKE), 2015 U.S. Dist. LEXIS 169667, at *28 (S.D.N.Y. Dec. 17, 2015).  Plaintiff contends that, as the *Whitfield* court noted, injury is almost inevitable when a police K-9 is used. *See id.* at *30.[1]

Plaintiff argues that "according to the complaint's factual allegations, at the time that he was viciously bit and attacked by the police K-9 under Deputy Caliendo's control, Plaintiff was handcuffed with his hands behind his back and was not resisting arrest or otherwise posing any threat to anyone, including Caliendo or the other officers by his side. This is the essence of excessive force." Pl. Mem. L. at 4.

――――――――――――――――

[1]The court in *Whitfield* stated:

> With the bite-and-hold technique, K-9 dogs are trained to bite and hold the suspect until commanded to release the suspect by the law enforcement K-9 officer. The suspect often struggles to avoid pain, injury, and arrest, prompting the dog to regrasp and hold with greater bite force. With this technique, the K-9 dog continues to bite and hold regardless of what the suspect does (surrenders, stands still, or attempts to flee). *Injury is almost inevitable*.

*Id.* at *30 (emphasis in original) (quoting *Melgar v. Greene*, 593 F.3d 348,361 (4th Cir. 2010)).

Plaintiff also argues that the case on which Deputy Caliendo relies, *Ellington v. County of Monroe*, does not support Defendants' argument related to the Fourth Amendment claim. There, the court stated that the plaintiff had provided no support in his opposition to the defendants' motion to dismiss the assault and battery claim based upon a K-9 bite, and that the court could "find no law supporting a claim for assault and battery against a police officer or his canine based on the latter biting a suspect." *Ellington*, 2018 WL 6605662, at *3.   However, Plaintiff notes, the court denied the defendant K-9 officer's summary judgment motion as to excessive force based on the police dog biting plaintiff after he had allegedly surrendered. *Id.*  Plaintiff notes that the court also denied qualified immunity, finding: "Here, no reasonable police officer could have determined that releasing Mic to bite Ellington, who had surrendered by laying on the ground, was lawful." *Id.* at *4.

## Defendants' Reply - Excessive Force

In their reply, Defendants cite to *Fischetti v. City of New York*, 199 A.D.3d 891, 158 N.Y.S.3d 163, 165-66 (2d Dept. 2021), for the proposition that under New York state law intentional contact made during the course of a lawful arrest does not constitute a civil assault and battery provided the force used by the defendant police officer was reasonable.  As Defendants indicate, the New York State Supreme Court, Appellate Division Second Department in *Fischetti* stated that "[c]laims that law enforcement personnel used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its standard of objective reasonableness."  *Id.* at 166 (citations omitted). In *Fischetti*, the Second Department found that the trial court had properly granted

summary judgment to the defendants because the defendants had established their prima facie entitlement to judgment by demonstrating that the arrest of the plaintiff was lawful, that the use of handcuffs during her arrest was not objectively unreasonable, and the plaintiff had failed to raise a triable issue of fact on these issues. *Id.* Here, Defendants argue that "the plaintiff has failed to allege, within the four corners of his Amended Complaint, that the arrest was unlawful. As such, Defendants contend that the only remaining question in the civil personal injury action before this Court is whether the officer's conduct was reasonable, which is analyzed in the context of the Fourth Amendment." Reply, at 7.

Defendants also argue that "the plaintiff's claims that the defendant, Joshua Caliendo, was acting 'within the scope of his employment' at all times, and that Deputy Officer Caliendo acted 'maliciously', are opposite and contradictory, such that plaintiff cannot assert both in the same Amended Complaint." Reply at 7 (citing FAC at ¶¶ 3, 22[2]). Defendants further argue: "Plaintiff's allegation that the Defendant, Joshua Caliendo, was motivated by malice during the dog bite, directly undermines and contradicts the allegation that the dog bite occurred while the defendant was acting within the scope of his employment, such that they cannot coexist." *Id.* at 7-8 (citing *Kruger v. EMFT, LLC*, 87 A.D.3d 717, 718, 930 N.Y.S.2d 11, 13 (2d Dept. 2011);[3] *Fernandez v.*

---

[2]The FAC asserts at ¶ 22: "The acts and omissions of Defendant Caliendo were malicious, wanton and taken in reckless disregard of Plaintiff's federal and state rights to be free from excessive force."

[3]In *Kruger*, a worker brought a personal injury action against the premises owner and others, seeking damages for injuries he allegedly sustained when he fell from an elevation while working on a construction project at the premises. The Supreme Court,

(continued...)

*Rustic Inn, Inc*., 60 A.D.3d 893, 896, 876 N.Y.S.2d 99, 102 (2d Dept. 2009)[4]).

**Analysis - Excessive Force**

The Court turns first to the claim that Deputy Caliendo violated Plaintiff's Fourth Amendment rights by subjecting him to unreasonable force when Deputy Caliendo's police K-9 twice bit Plaintiff.  Plaintiff alleges that he was handcuffed behind his back and not offering any resistance or threat to the police or anyone else when he was bit by the K-9. As indicated in *Graham*, 490 U.S. at 395, every person has a Fourth Amendment right to be free from excessive force by police officers, including during the course of an arrest. To succeed on a Fourth Amendment claim, a plaintiff must demonstrate that the actions of the defendant officer were not objectively reasonable in light of the facts and circumstances presented to the officer at the time of Plaintiff's arrest. *Id.,* at 397.  Whether

---

[3](...continued)
Kings County, denied the worker's motion to amend the complaint, and he appealed.  The Appellate Division, Second Department, held that the worker stated a claim for civil battery and intentional breach of voluntarily assumed duty of care to provide medical care, but that the Workers' Compensation Law's exclusive remedy provision barred the worker's claim for negligent infliction of emotional distress. The Second Department found that "[w]hile an intentional tort may give rise to a cause of action outside of the ambit of the Workers' Compensation Law, the complaint must allege an intentional or deliberate act by the employer directed at causing harm to [a] particular employee." *Kruger*, 87 A.D.3d at 718–719.

[4]In *Fernandez*, the Appellate Division, Second Department held that under the doctrine of *respondeat superior*, an employer can be held vicariously liable for the torts committed by an employee acting within the scope of the employment. *Fernandez*, 60 A.D.3d 893, 896, 876 N.Y.S.2d 99, 102.  "Pursuant to the doctrine, the employer may be held liable when the employee acts negligently or intentionally, so long as the tortious conduct is generally foreseeable and a natural incident of the employment." *Id.* (citations omitted). "However, liability will not attach for torts committed by an employee who is acting solely for personal motives unrelated to the furtherance of the employer's business." *Id.*

an officer's actions were reasonable depends on a fact-intensive inquiry which takes account of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*, at 396-97.

As Plaintiff points out, the courts within this Circuit, including in the Northern District, have long recognized that a police officer's use of significant force on a detained and subdued suspect violates the Fourth Amendment's proscription against unreasonable force.  This holds true whether or not the arrest was lawful.  Further, courts have also found that the use of a police K-9 to bite, or to bite and hold, a suspect can constitute a significant degree of force.

When accepting the allegations in the FAC as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has stated sufficient allegations for his Fourth Amendment claim against Deputy Caliendo to survive the instant motion. The FAC alleges that the K-9 handled by Deputy Caliendo bit Plaintiff while Plaintiff was handcuffed behind his back and offering no resistance or threat.  The FAC also alleges that, with regard to Plaintiff's state law causes of action, Deputy Caliendo subjected Plaintiff to a K-9 attack without justification, and that he failed to secure the police dog for which he was responsible.  From these allegations, it can reasonably be inferred that Deputy Caliendo intentionally allowed the K-9 to bite Plaintiff either by directing the canine to do so, or by failing to restrain the K-9 when it exhibited aggressive conduct towards Plaintiff.  While it might ultimately be established that Deputy Caliendo was acting reasonably to control a disruptive situation; that the K-9's bites were merely the instinctive acts of a trained canine;

11

or that Deputy Caliendo acted solely for personal reasons unrelated to the furtherance of his employer's business, these conclusions are not evidenced by the allegations in the FAC.  Accepting that the K-9 twice bit Plaintiff, that Plaintiff offered no resistance or danger to the officers or others, that the second bite occurred while Plaintiff was face down on the ground while handcuffed behind his back, and that the bite to Plaintiff's right leg was significant enough to require 11 stitches and has since caused Plaintiff difficulties in walking and running, the FAC alleges facts supporting a plausible Fourth Amendment claim against Deputy Caliendo.

### Defendants' Position - Qualified Immunity

Defendants argue that Deputy Caliendo "is immune from suit under the doctrine of qualified immunity[] because the circumstances as they existed at the time of Plaintiff's arrest on July 18, 2021 renders the force applied by the K-9 dog handled by Deputy Caliendo neither excessive nor unreasonable." Def. Mem. L. at 7.  In this regard Defendants assert:

> [I]t is clear that Deputy Caliendo conducted himself and the K-9 dog properly and did not use excessive force while he was assisting in the arrest of the Plaintiff. Due to the physically violent altercation in which Plaintiff was involved, numerous police officers from the Town of New Paltz, including UCSO Deputy Caliendo, were called to the scene to de-escalate and neutralize the situation, and the inference must be made that the detention and restraining of the Plaintiff was required in order to do so. In considering a claim that a police officer used excessive force in the course of effecting an arrest, it is important to make allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation, and that unless "no officer of reasonable competence *could have* made the same choice in similar circumstances," Deputy Caliendo should be granted qualified immunity. *LaFever v Clarke*, 525 F. Supp.3d 305 (N.D.N.Y. 2021); *Lennon v. Miller*, 66 F.3d 416,420 (2d Cir. 1995)(emphasis added); *see also Myers v. Patterson*, 819 F.3d 625 at 633 (2d Cir. 2016).

12

Def. Mem. L. at 8.

Defendants argue that "in consideration of Deputy Caliendo's assessment of the nature and severity of the situation, any perceived threat to the safety of the officers or others at the scene, and the Plaintiff's conduct as the officers were effectuating arrest, deference should be given to Deputy Caliendo's professional judgment formed in the moments leading up his decision to utilize the police K-9 under his command, and the reasonableness of that judgment should be inferred." *Id*. at 8-9 (citing *Graham*, 490 U.S. at 396-97).

### Plaintiff's Position - Qualified Immunity

Plaintiff argues that Deputy Caliendo is not entitled to qualified immunity because, as of July 2021, it had been well established for over twenty years that a police officer cannot use significant force, including a police K-9, on a handcuffed and otherwise subdued detainee without violating the Fourth Amendment. *See, e.g., Whitfield*, 2015 U.S. Dist. LEXIS 169667, at *28 ("First, it was clearly established law in the Second Circuit as of April 2000 that it was a Fourth Amendment violation to use 'significant' force against arrestees who no longer actively resisted arrest or posed a threat to officer safety," and "the use of a police dog constitutes, at a minimum, a significant degree of force."); *Walsh v. City of Kingston*, No. 08-CV-00611 (TJM), 2010 U.S. Dist. LEXIS 15726, at *12-*14 (N.D.N.Y. Feb. 23, 2010)(denying qualified immunity to police officers based on a police K-9 biting plaintiff when, the plaintiff asserted, he was lying face down on the ground); *Bradle*y, 703 F. Supp. 2d at 121 ("The Court finds that is beyond question that the right to be free from excessive force was clearly established at the time of Plaintiff's arrest.

13

Furthermore, the Court finds that a reasonable officer would have known that continuing to assault a handcuffed and subdued arrestee, and/or releasing a police dog on a handcuffed, immobilized arrestee violated that right.")(internal quotation marks and citations omitted); *Kavazanjian v. Rice*, No. 03-CV-1923 (FB)(SMG), 2008 U.S. Dist. LEXIS 103881, at *15-*16 (E.D.N.Y. Dec. 22, 2008) ("It is beyond question that the right to be free from excessive force was clearly established at the time of Kavazanjian's arrest, and, assuming Kavazanjian's testimony is true, any reasonable officer would have known that releasing a police dog on a handcuffed, immobilized arrestee violated that right."); *Maye v. Vargas*, NO. 3:07-cv-1690 (JCH), 2009 U.S. Dist. LEXIS 67443, * 17 (D. Conn. July 29, 2009) ("[N]o objective officer would think it reasonable to release a dog on an individual who is indicating surrender."); *McKinney v. City of Middletown*, No. 3:12-CV-00337(AVC), 2019 U.S. Dist. LEXIS 233262, at *25 (D. Conn. May 16, 2019) (law clearly established "that an officer can not deploy a canine on persons who are compliant and not actively resisting").

Plaintiff argues that Defendants' attempt to "bend the complaint's factual allegations to support [the] contention" that "Deputy Caliendo conducted himself and the K-9 dog properly and did not use excessive force" is patently improper on this motion and must be rejected.

**Analysis - Qualified Immunity**

The Court applies a two-step analysis to determine whether qualified immunity bars Plaintiff's claim against Deputy Caliendo for civil damages related to his actions taken in the course of his official duties. *Sabir v. Williams*, 37 F.4th 810, 817 (2d Cir. 2022).

14

"Pursuant to that analysis, qualified immunity shields federal and state officials from money damages unless the plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (cleaned up).  For reasons discussed above, Plaintiff has pled facts plausibly showing that Deputy Caliendo violated Plaintiff's Fourth Amendment rights by using excessive force in the course of an arrest.  Thus, the Court turns to the clearly established prong.

As the Second Circuit recently stated, "[a]lthough the scope of qualified immunity is considered broad enough to protect 'all but the plainly incompetent or those who knowingly violate the law,' it is not available when an officer's actions are not objectively reasonable in light of clearly established law." *Id.*, at 822 (quoting *Ziglar v. Abbasi*, ––– U.S. –––, 137 S. Ct. 1843, 1867, 198 L. Ed.2d 290 (2017) (internal quotation marks omitted)). The Supreme Court "has 'repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation,'" *id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)), but when the qualified immunity defense is raised on a motion to dismiss the defendant "must face the 'more stringent standard applicable to this procedural route.'" *Id.* at 823 (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).  "'Not only must the facts supporting the defense appear on the face of the complaint [or the evidence in its attachments], but ... the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* (quoting *McKenna*, 386 F.3d at 436) (internal quotation marks and citation omitted)).  "On a motion to dismiss, the plaintiffs are 'entitled

15

to all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense.'" *Id.* (quoting *McKenna*, 386 F.3d at 436).

Here, as Plaintiff argues and based upon the case law he cites, it has been well established for over twenty years that a police officer's use of significant force, including through the use of a K-9 to bite a suspect, on a handcuffed and otherwise subdued detainee violates the Fourth Amendment.   Although Defendants contend that Deputy Caliendo conducted himself and the K-9 properly and did not use excessive force under the circumstances as he assessed them to be, Deputy Caliendo's assessment of the circumstances is not supported by the FAC.  Even though he contends the situation called for him to make split-second judgments in circumstances that were tense, uncertain, and rapidly evolving, the face of the FAC does not support this assessment.  Rather, the allegations indicate that at the time that Plaintiff was bitten by Deputy Caliendo's K-9, Plaintiff was handcuffed behind his back, was posing no threat to the officers or others, was not attempting to escape, and was laying face down on the ground during the second bite.  Again, while the facts may develop to show different circumstances at the time Plaintiff was bitten, the face of the FAC does not support Deputy Caliendo's assessment. Under the circumstances as alleged in the FAC, a reasonable officer would have known that deploying a police K-9 to bite a handcuffed and subdued arrestee violated the Fourth Amendment.   Accordingly, Deputy Caliendo's application for qualified immunity is denied without prejudice, and may be renewed at a later time.

**2.  Assault and Battery Claims**

16

Defendants assert that Plaintiff's state law causes of action against Deputy Caliendo for assault and battery must be dismissed. Defendants also contend that "the state law claim for *respondeat superior* against Ulster County for the alleged actions of Deputy Caliendo must be dismissed as a matter of law when the underlying tort upon which it is based has been dismissed." Def. Mem. L. at 10 (citation omitted).  Plaintiff opposes these arguments.

**Defendants' Position** - **Assault and Battery Claims**

Defendants cite to *Ellington, supra*, for the proposition that there is no precedent to support claims of assault and battery committed through or with the use of a police K-9. Defendants argue that "Plaintiff's claims here are based on nothing but allegations of intentional conduct by Deputy Caliendo, while at the same time entirely failing to allege any intentional conduct by Deputy Caliendo." Def. Mem. L. at 10.  Defendants contend that "Plaintiff's claims contradict, are fundamentally at odds with, and are unsupported by Plaintiff's factual allegations and the laws of New York State.  As such, . . . Plaintiff's state law causes of action for assault and battery" should be dismissed as a matter of law. *Id*.

Defendants also assert that "in the absence of any wrongful or actionable underlying conduct by Deputy Caliendo, there can be no imposition of vicarious liability against Ulster County, Deputy Caliendo's employer, pursuant to the doctrine of *respondeat superior* for Deputy Caliendo's common-law assault and battery claims." *Id*. (citing *Zanfardino v City of New York*, 230 F. Supp. 3d 325, 338 (S.D.N.Y. 2017)("Plaintiff's claim for *respondeat superior* liability against the City must be dismissed, however, inasmuch as all claims against Detective Wilson are being dismissed, and there is as a

result no underlying tort upon which to base such vicarious liability.")(citations omitted)).

### Plaintiff's Position - Assault and Battery Claims

Plaintiff contends that despite the court in *Ellington* noting that it had found

no law supporting a claim for assault and battery against a police officer or his K-9 based

upon the K-9 biting a suspect, the Second Circuit, the district courts within the Second

Circuit, and New York state courts "have long recognized the viability of assault and

battery claims based on unjustified police K-9 bites." Pl. Mem. L. at 7.  Plaintiff contends

that "[t]his follows from the fact that, other than the color of law requirement, state law

claims of assault and battery are analyzed identically to federal constitutional claims of

excessive force." *Id.* (citing *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363,398

(S.D.N.Y. 2013) ("In effect, the test for whether a plaintiff can maintain state law assault

and battery causes of action against law enforcement officials is the exact same test as

the one used to analyze a Fourth Amendment excessive force claim."); *Posr v. Doherty*,

944 F.2d 91, 95 (2d Cir. 1991)(other than color of law requirement, "the essential

elements" of § 1983 excessive force claim and state law assault and battery claims are

"substantially identical").

In support of his position, Plaintiff cites to *McKinney v. City of Middletown*, 712 Fed.

Appx. 97, 98 (2d Cir. 2018)(Summary Order), where the Second Circuit reversed summary

judgment in favor of police officers on plaintiff's claims of excessive force and assault and

battery under Connecticut state law based on the officers' "use of baton strikes, the use of

a taser, and, especially, the use of a police canine."  Plaintiff argues that federal courts in

this Circuit have routinely recognized that state law assault and battery claims will arise

from officers' unreasonable use of police dogs. Pl. Mem. L. at 7-8 (citing *Boudreau v. Smith*, No. 3:17-cv-589 (SRU), 2017 U.S. Dist. LEXIS 108048, at *14 (D. Conn Jul. 12, 2017)("Boudreau alleges that Officer Amasino assaulted him with his patrol canine, Joker, while he was handcuffed and adhering to the officers' demands, causing him physical and psychological injuries . . . . Because the assault and battery claim arises out of the same set of facts as the Fourth Amendment excessive force claim, I will permit the assault and battery claim to proceed at this time."); *Bradley v. Bongiovanni*, No. 18-CV-6823-FPG, 2021 U.S. Dist. LEXIS 155044, at *30-34 (W.D.N.Y. Aug. 17, 2021) (denying summary judgment on plaintiff's excessive force and assault and battery claims based, in part, on the defendant's failure to intervene and stop a police dog from biting plaintiff on his wrist and leg after Plaintiff was on the ground and handcuffed); *Sanabria v. Martins*, 568 F. Supp. 2d 220, 228 (D. Conn. 2008)(on the plaintiff's constitutional excessive force and Connecticut state law assault and battery claims based on the contention that the defendant utilized his police dog, Thor, in an excessive manner, the court held: "Whether Thor subdued Sanabria in a manner that Martins did not anticipate—for example, by biting Sanabria with more force than strictly necessary after Martins decided to utilize Thor—may certainly prove relevant to the qualified-immunity inquiry, but this would not be a sufficient basis on which to conclude that there was no constitutional violation in the first place."); *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 791 (6th Cir. 2012) (upholding denial of summary judgment on plaintiff's excessive force and state-law assault and battery claims based on police K-9 bites); *Castro v. Martin*, 854 Fed. Appx. 888, 890 (9th Cir. 2021)(upholding denial of summary judgment on plaintiffs excessive force and state-law

battery claims based on police K-9 bites)).  Plaintiff maintains that the same holds true for New York state courts.  *Id.* (citing *Relf v. City of Troy*, 169 A.D.3d 1223, 1226-27 (3rd Dept. 2019)("[I]f Ashe intentionally released his dog with the intent that she seize or bite someone (*i.e.*, the robbery suspects), he can be held responsible for battery against a person who was unintentionally injured by the instrumentality he released.").

Plaintiff argues that the Court should exercise supplemental jurisdiction "over the state law claims against the County of Ulster" because the "state law assault and battery claims against the County are clearly part of the same case or controversy as his federal constitutional claim against Caliendo."  *Id.*

## Analysis - Assault and Battery Claims

### Assault Claim

Under New York Law, a civil assault is an intentional placing of another person in fear of imminent harmful or offensive contact. *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001).  To recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact. *Morgan v. City of Utica*, 2021 WL 2036680, at *5 (N.D.N.Y. May 21, 2021).  Here, the allegations that Deputy Caliendo subjected Plaintiff to a K-9 attack and failed to restrain the K-9 for which he was responsible are sufficient to support a plausible inference that Deputy Caliendo intentionally placed Plaintiff in fear of imminent harmful or offensive contact from the dog before Plaintiff was actually bitten. *See* FAC § 26 ("By subjecting Plaintiff to a K-9 attack without justification and failing to secure the police dog for which he was responsible, Defendant Caliendo committed an assault against Plaintiff, as he caused Plaintiff to

reasonably fear a harmful touching."); ¶ 27 ("Defendant County of Ulster has *respondeat*

*superior* liability for the assault and battery suffered by Plaintiff when he was bitten twice

by the UCSO police K-9 without justification and made to reasonably fear a harmful

touching."). Further, the allegations that Plaintiff was first bitten while he was walking to the

patrol car, and then bitten a second time while he was on the ground, are sufficient to

support a plausible inference that Plaintiff was placed in imminent apprehension of

harmful contact from the K-9 between the first and second bite.  Thus, the civil assault

claim against Deputy Caliendo will be allowed to proceed.

### Battery Claim

A civil battery is an intentional wrongful physical contact with another person

without consent, *Girden*, 262 F.3d at 203, and may be accomplished either personally or

by means of an instrumentality such as a police dog. *See Relf*, 169 A.D.3d at 1226.[5]

While there appear to be few cases that have examined New York State civil battery

claims based on police K-9 bites, *Relf* is one that allowed such a claim to proceed.

Furthermore, a number of courts, including this one, have held that the Fourth

Amendment excessive force standard applies to assault and battery claims against a

police officer under New York law. *See Marcano v. City of Schenectady*, 38 F. Supp. 3d

238, 263 (N.D.N.Y. 2014)(citing *Humphrey v. Landers*, 344 Fed. Appx. 686, 688 (2d Cir.

2009)). These holdings are best understood in the context of civil battery claims because

the *Graham* Fourth Amendment standard is based upon the use of excessive force by the

---

[5]("[I]f Ashe intentionally released his dog with the intent that she seize or bite someone (i.e., the robbery suspects), he can be held responsible for battery against a person who was unintentionally injured by the instrumentality he released.")(citation omitted).

police.  Here, because Plaintiff has stated a plausible Fourth Amendment claim against

Deputy Caliendo based upon the use of excessive force, and because Plaintiff's excessive

force and battery claims are based upon the same factual circumstances, Plaintiff has

stated a plausible civil battery claim against Deputy Caliendo.  Accordingly, the civil battery

claim will be allowed to proceed.

### Vicarious Liability - County of Ulster

The allegations in the FAC indicate that Deputy Caliendo was acting in furtherance

of his employer's law enforcement function when the circumstances arose that form the

basis of the state law claims. There is no indication on the face of the FAC that Deputy

Caliendo acted solely for a personal reason or motive when his K-9 bit Plaintiff. Thus,

there is sufficient reason to allow the *respondeat superior* liability claim against the County

of Ulster to proceed based on the assault and battery that Plaintiff contends he suffered.

### 3.  Municipal/*Monell* Liability against the County of Ulster

Defendants argue that the Court "should dismiss Ulster County as an improper

party in this action, as no viable claims, state or federal, have been asserted against it,

and Defendant Ulster County cannot be held liable for the actions of Defendant Deputy

Caliendo under § 1983 under a theory of *respondent superior* as a matter of law." Def. M.

L. at 11 (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)).

### Analysis - *Monell* Liability

As to the County of Ulster, the FAC asserts: "Defendant County of Ulster has

*respondeat superior* liability for the assault and battery suffered by Plaintiff when he was

bitten twice by the UCSO police K-9 without justification and made to reasonably fear a

22

harmful touching."  FAC ¶ 27.  For reasons stated above, the FAC asserts a plausible claim in this regard.  The only § 1983 claim in the FAC is against Deputy Caliendo for violating Plaintiff's Fourth Amendment rights by subjecting him to unreasonable force.  *See* FAC ¶ 24.  Thus, there is no reason for the Court to determine whether a *Monell* liability claim could be sustained against the County of Ulster.  Accordingly, Defendants' motion in this regard is denied.

## V.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, Dkt. 11, is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 26, 2022

Thomas J. McAvoy
Senior, U.S. District Judge